LEWIS L. MARBLE ET AL., PLAINTIFFS IN ERROR, V.
THE JONES & MAGEE LUMBER COMPANY, DEFEND-
ANT IN ERROR.

Mechanic's Lien:  CASE STATED.  A lumber dealer was furnish-
ing lumber for the erection of a building in the course of erec-
tion under contract; the contractor applied at the lumber yard
for certain pieces of lumber, stating that the immediate pur-
pose for which he wanted them was to prop up the brick walls;
that he might use them in the erection of the building; that if

he did not use them in the building he would return them; that if he did use them he would notify the lumberman, so that he might charge them up; four days after the delivery of the last material for said building by the lumber dealer other than the pieces of lumber in question the contractor applied at the office of the dealer, told him that he had used the said pieces of lumber in the building, and to charge them up. *Held*, That for the purposes of the mechanic's lien law the said pieces of lumber were furnished at the date of the notification of the lumber dealer by the contractor; that he had used them in the building, and to charge them up.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Phil. E. Winter* and *Hazlett & Bates*, for plaintiff in error.

*Hardy & McCandless*, for defendant in error.

COBB, J.

This action was brought in the court below to enforce a mechanic's lien for lumber furnished by the plaintiff company to the defendants Marble & Darling, and by them received for and used in the erection of a certain building for and on the land of the other defendants in the action. So far as can be ascertained from the abstract there was no answer or appearance in the case by or on the part of the defendants Marble & Darling. The other defendants appeared and answered, admitting the partnership of defendants as alleged, and the ownership of the premises as alleged, but denying each and every other allegation contained in the plaintiff's petition.

There was a trial to the court, which found generally for the plaintiff and against the defendants, and found the amount due the plaintiff from the defendants for material furnished, etc., at $1045.75, and that the same was a lien on the real estate descr'bed in the petition.

A motion for a new trial was overruled, and the cause is brought to this court by the answering defendants.

Under the general assignment of error, that "The findings are not sustained by sufficient evidence," two points are presented: *First*, That the account in writing of the items of material furnished for the building was not filed in the county clerk's office within sixty days from the furnishing of such material; and *Second*, That the court erred or made a mistake in computing the amount due the plaintiff for such material. It appears from the transcript that the account in writing of the items of material furnished, etc., was filed in the office of the county clerk on the 14th day of November, 1882. So that unless the said material, or some substantial portion thereof, was furnished by the plaintiff as late as the fifteenth day of September of that year, the account was not filed within the time required by the second section of chapter 54 of the compiled statutes. By reference to the bill of particulars attached to the petition, which I assume to be a correct copy of the account of items furnished, as filed in the office of the county clerk, I find the following items under date September 15th, 1882.

" 6 8s, 4x4—24    192
4 8s, 4x4—22    116    308 C. 26, 800.

2 8s, 2x12—16    64    C. 26, 166—966."

As to these items, A. G. Davis, a witness on the part of the plaintiff, and who was the agent in charge of plaintiff's business at Wymore, when the items of building material constituting plaintiff's claim were furnished, testified in rebuttal, as follows:

Q. Look at these items of the 15th of September, 1882 (giving the items as above). Tell the court if you have any present recollection as to the delivery of these articles?

A. These pieces were borrowed from the yard I was clerking in, some quite a while before, as I under-

stood, for braces for the building, and the carpenter said he wanted them for braces.

Q. Who was that?

A. It was Marble. He told me if he used them in the building he would come in and have them charged, and if not, he would return them; and on the 15th day of September he came in and said they were used in the building.

Q. What else?

A. These three items.

Q. Did he say he would take them?

A. He said they were used in the building, and to charge them up."

Upon the above facts, which were, of course, found to be true by the trial court, I think that September 15th, 1882, was the true date of delivery for the purposes of the lien. That was the day upon which plaintiff was authorized to charge these items up to the defendants, or either of them; and clearly, if the books of the plaintiff were properly kept and the items charged under the proper dates, it must be held to be in time if it proceeded to file the lien within the statutory limitation after such dates.

The Minnesota case cited by counsel for plaintiffs in error, *Johnson v. Gold*, XXI. N. W. R., 719, is not in point. In that case certain doors were charged in the "account of items," under a certain date. It was in proof before the trial court; it seems that some time afterwards, there were also furnished three lights of glass and a transom, which were set in or attached to these doors, or some of them, and the plaintiff in that case contended that the time limited for filing the lien only commenced to run from the date of the furnishing of these lights of glass and transom for the doors, and as I understand the opinion, such would have been the holding of the court had the lights of glass and transom been charged in the account as separate and substantive items, which they were not.

Upon the second point I have not only thoroughly examined the abstract, but also the transcript itself, and have come to the conclusion that there was a mistake or error committed by the trial court in computing the amount of the finding and judgment, which must be rectified, or the judgment must be reversed. Indeed the writer is almost inclined to favor a peremptory reversal of the judgment as a method of emphasizing our disapproval of what seems from the evidence to have been the manner of keeping the books of plaintiff company. It appears to have been their custom, when a person proposing to build would deliver to them an estimate of the quantity, quality, and dimensions of the lumber to be used in the erection of such building, they would enter the same in detail on their books in the shape of a debit account against such person, giving the price of each item. Then, if the prices suited the builder, and other circumstances resulted in the building being proceeded with, they would check off each item as delivered. It seems that form of book-keeping was pursued in this case. As well as I can make out the evidence the lumber as set out in the original estimate was described in the bill of items filed with county clerk and sued on in district court, but that such was not the true description of the items of lumber actually delivered, I quote further from the testimony of the witness Davis:

Q. (Handing witness a book.) You may look at that book and state what book that is.

A. That is the original estimate of the Marble & Darlings bill for Winters; the book that contains the estimate.

Q. Is that the book in which all the original estimates were entered by the agent of the Jones & Magee Lumber Co.?

A. Yes.

Q. That is the estimate of the bill of lumber of this building in controversy, is it?

A. Yes.

Marble v. Lumber Co.

Q. Who made that estimate? Who wrote that?

A. That, I think, is the clerk's putting down the estimate.

Q. (By the court.) What kind of a book is this—the original estimate?

A. A man fetches in a bill to be figured on; we put his bill down just as he wants the lumber, and carry out the figures and tell him what we will sell him that amount of lumber for; then if he buys we deliver him so much lumber.

Q. Did he make an agreement for that lumber?

A. That is the estimate we filled.

Q. That is the memorandum of the amount sold?

A. The memorandum of the amount the carpenters wanted figured on; if somebody had sold cheaper I would have crossed it out as not sold, and if ours is the lowest we deliver from that.

Q. He accepted that estimate?

A. He accepted that estimate.

Q. Do you know whether it is correct or not?

A. That is correct.

Q. That is a custom you have of putting down estimates that way?

A. Yes.

Q. That was all put down at the time before the delivery was made?

A. Yes.

Q. And you delivered according to that?

A. Yes, and checked it off.

Q. What did you say about its being correct?

A. I say it is correct to the best of my knowledge.

Q. (By Mr. Ashby.) Now you may state what changes are made in that estimate.

A. That is my own handwriting; it says: "This bill wants to be changed from 120 pieces 2x12—24 to 20 pieces 2x12—24; from 130 pieces 2x12—26 to 230 2x12—26."

47

Q. (By the court.)    When was that to be done?

A. Before the bill was sold.

By reference to the bill of particulars attached to the bill of exceptions it will be seen that it differs from the items of account filed with the county clerk, a copy of which was also attached to the petition in the number of pieces, the number of feet of lumber is carried out, and charged for just the same—say: " 20 ps. 2x12—24—5,760," while 20 pieces 2x12—24 feet only makes 960 feet of lumber, and at $32 per thousand amounts to $30.72, while it goes into the bill finding and judgment as 5,760 feet of lumber at $32 per thousand, amounting to $184.32, and making a difference against the defendants of one hundred fifty-three dollars and sixty cents.    It seems that the whole bill was discounted a considerable sum, but the rate per cent is not given, and the time at my disposal does not admit of my making a calculation, either of the discount or interest applicable to this overcharge.    It will be assumed that one about balances the other.

The judgment of the district court will be reversed and the cause remanded for a new trial, unless the defendant in error shall, within twenty days from the date of the filing of this opinion, remit from said judgment the sum of one hundred fifty-three dollars and sixty cents, in which case said judgment is to stand affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.